Good morning. I'm here to please the Court. Dan Butler for Defendant Don Foods, Council. This case comes before you on a Commission decision, and whether that Commission decision is supported by the manifest way of the evidence.   Specifically, what are the findings on causal connection of the condition of ill-being with the original accident? The Commission based its findings primarily on the opinions of Dr. Butler. He reviewed records, as is seen in his report. He examined petitioner. He then reviewed an MRI scan. And in August of 2013, and then with an addendum in September, he came to the conclusion that Mr. Whitmer had a lumbar strain related to the original injury, which by the time of his examination was largely resolved and he was able to return to work. Cutting to the chase here, I think the Commission cited two reasons for fighting against the claimant. One was the claimant's credibility vis-à-vis denying previous back problems when the medical records indicated he did. And two was the opinion of Butler, which they found to be superior to Ranella, and they specified reasons why they found that. Correct. So your opinion is very simple. Your argument is that's insufficient evidence to support the Commission's decision. It is sufficient. Did the circuit court articulate why they felt that the evidence was insufficient? The circuit court, the way I would read that is she basically disagreed with what Butler was saying, and she believed that the weight of the medical evidence was on the treating medical evidence. Right. But as we know, the trier, the reviewing judge or this panel is not supposed to substitute the judgment for that of the trier effect. That's correct. She reversed the Commission on that basis. Okay. As the Justice has said, Dr. Butler had noted this degenerative condition. He had noted a preexisting condition. The plaintiff relied on treating medical from Dr. Anand, who is the family care physician, as well as Dr. Ranella. And those doctors found discrimination in that more treatment was necessary. The Commission ended up adopting Dr. Butler's opinion because he had all the knowledge possible in this case. He had all the records. He was aware that there was that preexisting visit, preexisting accident on March 29, 2013, where petitioner complained of back pain. So when he found there's a degenerative condition, there is some support in the record that there was preexisting back pain. And shortly, Commission concludes by saying his opinions were more persuasive as he had reviewed records and had knowledge of the preexisting injury. Butler also directly addressed this causation issue in his reports. Ranella doesn't really address on-point causation. He just really talks about what treatment he feels is necessary. The Commission does go further, and there is a fact in the decision itself which notes that he was on medicine prior to the injury. That is not a correct fact. The report from March 29, 2013, a few weeks before the accident, shows that he visited his personal care physician, Dr. Anand, and shows that he complained of back and hip pain. There was preventative counseling for weight loss. There was medication prescribed, and the only description of that medication is Xanax. So the issue that we have to come to here is, does this statement itself somehow render the entire decision against the manifest weight of the evidence? And it's our position that there is sufficient evidence. The case law says there must be sufficient evidence to support the decision. And in this case, I've cited to that sufficient evidence. That is, we have Dr. Butler's opinion, and we have the fact that he did have the credibility findings of the Commission. The Commission did not find Petitioner particularly credible as he did not, on cross-examination, admit to having preexisting back pain. It also is a matter of, you know, did the Commission rely on this one fact, this one incorrect fact in its decision? And if you look at the body of the decision, there's a paragraph where this fact is located, located at the very end of it. And basically, the Commission goes through what the arbitrator found, they state they disagree, and then they go into the reasons why they disagree. And that, again, is due to the preexisting, the existence of this preexisting back pain, the fact that there's no evidence that that back pain had resolved before the injury, and Petitioner's credibility itself. So if we, I guess, put our thumb over that last sentence about the medication, there are still sufficient reasons in that paragraph why the Commission adopted Dr. Butler's opinion and found him against causation. Then we turn to the end of the decision itself. And, again, they go into why they feel Dr. Butler's opinion is stronger than Dr. Ronella's, and that is due to the fact that he had all the records, that he was aware of his preexisting condition, and that he had basically a more complete report. With that said, the causation findings of the Commission should stand. We are not dealing with a situation here where the accident itself is denied, there was a compensable accident. We're not dealing with a situation where there wasn't an injury. There was an injury. It's the nature of that injury and the causal connection at the time of the hearing of that injury with the original accident. Turning to the TTD, we have the same, because of the causation findings, the TTD findings should also stand. The petitioner was originally released to light-duty work by the company clinic doctor, Dr. Panuska. He worked a few days. He didn't return to Dr. Panuska. He went back to Dr. Anand and was taken off work. We then sent him to Dr. Butler. In August, Dr. Butler found him able to return to work, as he had originally a lumbar strain. And that decision, going on with the strength of Dr. Butler's opinion and carrying out the causation opinion, should be affirmed. In conclusion, the Commission did not find the petitioner credible as to the issues of causation and his reporting of the back pain. Dr. Butler was found to be a more credible physician. It is the Commission's job to weigh evidence. In this case, they weighed evidence, and there is sufficient evidence to support the Commission's decision. Thank you. Thank you, Counsel. Counsel, you may respond. Thank you. May it please the Court, I'm Ian Elfenbaum of the Elfenbaum Everson Amarillo, representing Seth Whitmer, the athlete. Right to the chase. We understand manifest weight, a very difficult standard. We understand the Court should not substitute its judgment, so we're going to take our thumb off the decision and look at what it says and show that these two fundamental misunderstandings of the facts lead to the wrong conclusion by the Commission. And why is that essential? Because if what they base their reasoning on isn't true, how can they adopt an opinion, whether they like it or not, if the underlying facts don't exist? So the two points, and I'll list them both and then talk about each individually. Prior to the accident, Petitioner was already being prescribed medication for back and left hip pain. That's their first sentence in their reasoning. Under that, they say, by the time Petitioner saw Dr. Butler, the back strain had resolved. Petitioner's current condition returned to its pre-accident state. In other words, some sort of pre-existing condition of low back and left lower extremity pain. So they believe there's a pre-existing condition. They believe he's in treatment for it. Those are both false. Let's assume that everything you say right there is true. The Commission found the claimant's credibility was, quote, unquote, affected by his denial of prior back pain clearly indicated in the records. Medication or not, the medical records history indicated he had prior back pain. He was treated by Dr. Anand. Before that, he denied voicing any complaints at all about back pain or being diagnosed by Dr. Anand. And that testimony was contradicted by the medical records. Is that true, aside from the medication? Is that not true? It is an arguable truth, and here's why. He didn't recall having back pain. He didn't recall it. I'm wondering, what did Dr. Anand invent this? He x-rayed his left hip. He said, I went there for left hip pain. He x-rayed his left hip. What does his progress note say? Presented with complaints of pain involving back pain and left hip. Correct. But when they asked him about it a year later, he remembered the left hip. That doesn't make him not credible. He argued with me about his own doctor, because that's undirect. He thought he saw Panuska once. It was twice. They found that it was inconsistent, and they're entitled to make that finding. I think it's imperfect. Does it make what happened here not credible? And I'll take it to the next level. There's absolutely no treatment for back pain. I'm not talking about physical therapy, orders and restrictions. Nothing. Xanax. So the commission says he's on medication. Then got it wrong. Well, again, so they said medication, the whole case turns in it. The case, the issue is whether or not he had prior complaints, and so treating physicians for the condition. That alone, even if the doctor never gave him medication, what's the difference? Did he see the doctor or not? He did. Okay. And it was for back, as Justice Hoffman pointed out. Anxiety, left hip, back. That's what it says. Okay. All the way normal exam, that's also in there. But why can't the Tar Effect find that to be inconsistent with his denials of seeing the doctor for back pain? On the record, it is not perfect. Is it inconsistent? Okay. Does it make him not credible? You can argue it does not, but it is an inconsistency. Correct. Okay. But if you look at the rest of the facts, which begin immediately after that visit, and to the next sentence I'm talking about, what is his pre-accident state? So we know on March 29th, he was working a heavy lifting job. And I'm talking about a job where you lift every once in a while. 12 hours a day. So he's not injured. If he can do that, that's what I mean about credibility. He's able to do all that overtime for 20 days until he has an injury, which is not disputed. So if you pull your thumb off that reasoning and get to the next sentence, which talks about his pre-existing condition, it really didn't exist. And that's why he doesn't remember it. It's because of all the other things that happened in between there and then, of course, his treatment for the real back injury. And as you know from the facts, he immediately begins a course of care with a company physician. And within three days, he's prescribed physical therapy. Same physical therapy we were trying to get approved in the hearing a year later. So within three days, he goes from full duty, 12 hours a day, to five pounds lifting, no prolonged sitting and standing, essentially no work. And he tried some light duty. And he couldn't do it because his back spasmed. We get that argument, but again, it's going to turn on Butler versus Ranella as well. Because obviously Butler said that he had pre-existing symptoms. They resolved themselves prior to the work injury. The commission specifically found, as you know, his causation opinion was superior to Ranella's. And they gave reasons for that. So that's what you need to hone in on why they couldn't rely on Butler versus Ranella. Well, they misunderstood the case. So Butler says causation is soft. But he says it's soft. Why? Because a prior treatment never resolved. But there was no prior treatment to resolve. He was full duty with this heavy job. So if you accept these premises about his prior condition, it's the only way you can adopt his opinion. If you have the prior condition misunderstood, it makes no sense that he was disabled and working like that, had this specific injury, and has never been released again by any of his physicians. Okay. So to make it very simple, what was the prior condition? There wasn't one. There wasn't one. What did Dr. Anand diagnose him with in March of 2013? Anxiety. Sciatica? Does that ring any bells? From March 29th to March 18th. March 2013. You tell me. That doesn't ring any bells? Anxiety, back pain, left hip pain, preventive counseling, diet and exercise review, change to Xanax. Neurosite normal, no localized findings. So you're telling us carefully now he was never diagnosed by Anand with sciatica in March 2013. That's natural. 419, back pain, sciatica. Dr. Anand is the only doctor who saw him before and after the injury. The only one. Everything after this injury is workers' company. Everything he did, all the approval, everything went to workers' company. After the doctor's exam, Dr. Butler, he still was all workers' company. The other thing I want to talk about is the yo-yoing of his weight. That seems to be an issue in the case. Again, at the time of the injury, he weighed a lot less. He gained weight after the injury. Dr. Butler said he was deconditioned and on narcotic pain tolerance. Had issues with his narcotics. That's all he was getting because we couldn't get the PC approved. So he started gaining weight and he became deconditioned after the injury. I would expect that. That's not a surprising result of someone who's not active anymore and not getting their care. But to turn it around and say that's the cause of this condition, I think, misunderstands the mechanism of this injury and what happened with this lifting. So I don't see this as a battle of the doctors. I don't see this as a, you know, pick one or the other. I don't think the petitioner's credibility finding by the commission holds weight when you look at this overall testimony. He made a mistake about remembering the non-event of a back complaint 20 days prior to a severe injury. That's a disabled instance. I don't see how that's enough on a credibility finding to reverse this whole case. Just a quick note about circuit court. After the oral argument, the judge reversed and gave her reasons orally. She asked me to draft an order. We couldn't agree on it, so she had to do a one-sentence order. It said the appellate court doesn't care what I think anyway. So that's what happened. That should be in the transcript. She gave an oral presentation of her reasoning. It was not substituted judgment. It was similar to the arguments I mentioned today. So, just to conclude, to get to Butler's opinion, you have to take your finger off this paper and see there are two reasons to jump ahead. Now, I understand Madison's weight's a hard standard. In this set of facts, there's only one possible solution. This is a possible connection. Thank you. Thank you, counsel. Counsel, you may reply. Just a couple points. Counsel just talked about the yo-yoing of the weight. There's no medical opinion as to the cause of that yo-yoing weight. It's something the doctor noticed. The doctor noted the weights, but if you look at the record, as I cited in my reply brief, the weight goes up and down. There's no medical evidence that that's some kind of effect directly related to the injury. Counsel also mentioned that Butler indicated that causation was soft. That was a word in his second report. It still stands that when he originally saw him in August 2013, he believed that there was a lumbar strain. The lumbar strain is what's causally related to the injury. To him, though, that strain resolved. The commission put more weight on his opinions. They did not find the petitioner credible. Therefore, we find that the decision should stand. Thank you. Thank you, counsel. Vote for your arguments in this matter. We've taken our advisement. Written disposition shall issue, and the Court will stand in recess subject to call.